{¶ 19} As the trial court completely ignored our ruling and supportive reasoning set forth in Fisher I, I now dissent.
 {¶ 20} On June 30, 2003, this court reversed and remanded the instant matter for re-sentencing. The basis for our reversal inFisher I was the trial court's reliance upon its belief that appellant was guilty of the crime of murder and its use of this belief as justification for imposing the maximum sentence for voluntary manslaughter. We held that a court should avoid such determinations for two specific reasons:
 {¶ 21} "First, no evidence was expressly presented for the murder charge against appellant and therefore the court was making an unwarranted inferential leap in drawing [this] conclusion. This is so notwithstanding the court's collective incorporation of the testimony from the two prior trials in which appellant testified as the state's witness. That is, the testimony in the previous trials provided evidence of certain facts linking appellant to the crime(s). However, because appellant was not a defendant in the previous trials, no evidence was put forth to prove appellant was guilty of murder or kidnapping. Thus, the trial court's conclusion was tenuous because it requires recourse to separate trials where no evidence was put forth against appellant.
 {¶ 22} "Second, the court's comments suggest it participated in a fact finding exercise for charges that were dismissed and drew its own legal conclusions therefrom. This is problematic because it indicates the court harbored a bias toward appellant when it announced its sentence. That is, the court's belief as to appellant's guilt on the higher charge of murder reflected its own value-laden perspective. Although this perspective was based on what the court heard in two previous trials, the fact remains that the murder charges were dismissed. By commenting on appellant's guilt as to the murder charge, the court demonstrated a belief that appellant was legally accountable for a higher crime. As such, the court's decision to impose the maximum sentence was, at least in part, a function of its belief that appellant was guilty of the dismissed murder charge." Id. at ¶¶ 19-20.
 {¶ 23} We then held that, while the trial court mechanically complied with the statutory sentencing factors, it erred when it justified its imposition of a maximum sentence on its belief regarding appellant's guilt on a higher charge. In doing so, we determined the court "erroneously considered unsubstantiated, prejudicial facts in arriving at its sentence." Id. at ¶ 26.
 {¶ 24} On September 25, 2003, the trial court convened for appellant's remanded sentencing hearing. Notwithstanding our holding in Fisher I, the court again supported its finding with its "knowledge" that appellant was actually guilty of murder. The court stated:
 {¶ 25} "Now, I agree with the Court of Appeals that a judge should not use dismissed charges to give a heavier sentence. That would allow a prosecutor to dismiss possibly over-indicted or unsupportable offenses, and still have the judge use those offenses, as if they were proven, to punish the defendant for crimes for which there is inadequate evidence. However, a judge can use the admitted conduct of the defendant to form the basis: (1) for finding that he did commit the worst form of the offense, and (2) the reasons for that finding which would support a maximum sentence. That is what I did in this case. My reasons for imposing the maximum sentence in this case are as follows. Murder, which you were originally charged with, is a life sentence with parole eligibility after fifteen years. Voluntary manslaughter, to which I allowed you to plead guilty, is less than murder. It's a felony of the first degree with a maximum ten year sentence. Therefore, murder is a much worse form of manslaughter because its penalty, degree, and elements show more culpability and seriousness than manslaughter. * * * I said it last time — and I say it again — I know you're guilty of murder * * *."
 {¶ 26} The court continued at great length and with great exasperation in an attempt to clarify the above position for purposes of review. With respect to this revisited issue, the court concluded:
 {¶ 27} "What I'm saying is — murder is a worst form of voluntary manslaughter. The only reason I'm bringing up the crime of murder is in the context of the worst form of the offense and for no other reason. * * *"
 {¶ 28} In Fisher I, we unequivocally stated that such reasoning was inappropriate because (1) "guilt" is a procedural conclusion which presupposes a defendant's admission to a specific charge or a conviction after a trial in which the state proves a charge beyond a reasonable doubt (neither of which occurred here); and, (2) the court's recognition of its belief that a defendant is guilty of a higher, dismissed charge and its reliance on this belief to sentence the defendant to a maximum sentence suggested an inherent bias. Irrespective of this guidance, the trial court still used its conclusion that appellant was guilty of murder as a basis for imposing the maximum term.
 {¶ 29} Our holding in Fisher I was clear and unambiguous. As a matter of course, the trial court had neither the discretion nor the judicial wherewithal to re-examine our analysis of the legal issues on which our reversal and remand was premised. Our consideration of this issue is controlled by the "law of the case" doctrine, which provides:
 {¶ 30} "that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * *
 {¶ 31} "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. * * * However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. * * *
 {¶ 32} "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. * * *" Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3-4. (Internal citations omitted.)
 {¶ 33} Pursuant to the "law of the case" doctrine, the lower court does not have the authority to review a prior holding of an appellate court because such a power would be inconsistent with the structure of Ohio's judiciary as set forth in the Ohio Constitution. State v. Barnes, 11th Dist. No. 2002-P-0079,2003-Ohio-6674, at ¶ 17, citing, State ex rel. Potain v.Mathews (1979), 59 Ohio St.2d 29, 32. Accordingly, when a reviewing court reverses the judgment of a lower court and remands a matter, it does not do so to facilitate a critical dialogue between itself and the lower court. Rather, on remand, a trial court must proceed in light of the appellate court's holding without countermanding its guidance.
 {¶ 34} Here, the lower court acknowledged our holding. However, rather than heed the concerns announced in Fisher I,
the lower court attempted to demonstrate how our analysis inFisher I misunderstood its original position. During the sentencing hearing, the trial court pointed out that appellant's testimony in his co-defendants' trials indicated he assisted in the kidnapping of the victim which led to the victim's ultimate murder. From this, the court concluded: "I know you committed felony murder from your testimony, and that's a worse form of voluntary manslaughter." (Emphasis sic.) The trial court underscored this conclusion on several separate occasions during the sentencing hearing. Because the court revisited an issue we addressed in Fisher I, it was reviewing a prior holding of a superior court in violation of the "law of the case" doctrine.
 {¶ 35} Further, the court's substantive analysis on this issue was unsound. The theme of the court's "worst form of the offense" analysis was based upon its assumption that the higher crime of murder is the worst form of the lower crime of manslaughter. The court stressed:
 {¶ 36} "It's as easily recognizable an analogy as basic mathematics — two is more than one, therefore, two is a worst form of one. Murder is a more heinous crime than manslaughter, therefore, murder is a worst form of manslaughter."
 {¶ 37} I believe the trial court's analogy off-point but, more importantly, disagree with its reasoning: while murder is statutorily a greater crime than voluntary manslaughter, it does not follow that murder is the worst form of the offense of voluntary manslaughter. Murder and voluntary manslaughter are separate offenses, and the former cannot logically be the worst form of the latter. The trial court's mathematical analogy equivocates the legal meaning of the phrases "higher offense" and "worst form of the offense." To be sure, manslaughter is a lesser included offense of murder but it is not a lesser form of murder. By implication, murder is a greater offense than manslaughter, but it is not the worst form of manslaughter. In my view, the "worst form of the offense" analysis of R.C. 2929.14(C) is accomplished by considering the specific facts of the case and applying them to the criminal charge(s) of which a defendant is convicted (or to which he has pleaded guilty). As a matter of form, the sentencing court confused this analysis by asserting a defendant has committed the worst form of one offense by committing a separate, albeit more punitively severe, offense. Nothing in Senate Bill 2 or its many varied interpretations suggests such an untenable conclusion.
 {¶ 38} The trial court ignored our earlier exhortations with respect to using an uncharged, higher offense to substantiate its "worst form of the offense" discussion. It further confused the R.C. 2929.14(C) analysis by concluding the higher offense of murder is the worst form of the offense of manslaughter. Thus, in this writer's view, the trial court erred both procedurally and substantively in re-sentencing appellant.
 {¶ 39} Although the majority contends that the trial court otherwise complied with the statutory sentencing provisions in R.C. 2929.14(C) and R.C. 2929.19(B)(2)(d) in re-invoking a maximum sentence against appellant while justifying the sentence on the bedrock of harmless error, its conclusion sends what I consider an inappropriate pragmatic message — "why go through this exercise again when the trial court otherwise said the right things." My response to that syllogism is you cannot always cleanse the cancerous portion of such an exercise by a euphemistic injection of harmless error in the face of an unequivocal declaration of the law of the case. Such side stepping equates to reducing this doctrine to gelding status.
 {¶ 40} I would therefore reverse this matter and remand it for proceedings consistent with the foregoing analysis.